COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-345-CR
 
 
THE 
STATE OF TEXAS                                                                  STATE
  
V.
 
WAYNE 
T. BALLMAN                                                               APPELLEE
 
 
------------
 
FROM 
COUNTY CRIMINAL COURT NO. 6 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        This 
is a State’s appeal from the trial court’s grant of appellee’s motion to 
suppress in this driving while intoxicated case.  We affirm.
Background Facts
        The 
officer making the arrest for the DWI, Officer H.L. Gibbs, was the only witness 
at the suppression hearing.  Officer Gibbs testified that he stopped 
appellee Wayne T. Ballman when appellee made a right hand turn from a private 
parking lot onto Hulen Street without using his turn signal.  The State 
says this traffic code violation constituted probable cause to stop appellee and 
to issue a traffic citation.  See Tex. Transp. Code Ann. § 545.104 
(Vernon 1999) (requiring operator to activate a turn signal to “indicate an 
intention to turn”).
        At 
the suppression hearing the arresting officer admitted that the stop was a 
pretext stop primarily based upon a citizen call received by dispatch over an 
hour earlier claiming that appellee’s car was being erratically driven.  
The citizen made three calls to police while following the vehicle.  She 
identified herself in two of the calls as “Karen“ and gave dispatch her cell 
phone number.  She also gave dispatch the vehicle type, color, and license 
plate number and told dispatch that the vehicle was turning into a Central 
Market parking lot.  She had followed the vehicle from Camp Bowie Boulevard 
until it turned into the lot.
        When 
Officer Gibbs located the car, it was parked. It was empty when he stopped and 
looked inside.  He spoke with a private security officer at one of the 
stores and asked the officer to call him if he saw the car leaving.  About 
a half hour later the security officer called Officer Gibbs, who arrived at the 
parking lot, watched the car leaving the lot, and observed the vehicle make a 
right-hand turn, after stopping, without a signal.  The trial court found 
that the failure to signal was the only driving fact that Officer Gibbs observed 
and the only act that could have caused the officer to believe the driver was 
intoxicated.  Because the trial court also found there was no traffic code 
violation, it granted appellee’s motion to suppress.
Points on Appeal
        In 
eight points, the State challenges the trial court’s order granting the 
suppression of the DWI evidence.  Although the State presented eight points 
on appeal, each point is based upon whether the arresting officer had reasonable 
suspicion or probable cause to stop appellee solely on the basis of appellee’s 
alleged traffic code violation.
Standards of Review
        The 
Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV.  For an 
arrest to be justified under the Fourth Amendment, it must be accompanied by 
probable cause to believe that a person has engaged in or is engaging in 
criminal activity.  Henry v. United States, 361 U.S. 98, 102, 80 S. 
Ct. 168, 171 (1959).  A detention, however, may be justified on less than 
probable cause if a person is reasonably suspected of criminal activity based on 
specific, articulable facts. Terry v. Ohio, 392 U.S. 1, 22, 88 S. Ct. 
1868, 1880 (1968); Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim. 
App. 2000).
        We 
review a trial court's ruling on a motion to suppress evidence under a 
bifurcated standard of review.  Carmouche, 10 S.W.3d at 327; Guzman 
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the 
trial court's decision, we do not engage in our own factual review. Romero v. 
State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best v. State, 118 
S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is 
the sole trier of fact and judge of the credibility of the witnesses and the 
weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 
855 (Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d 889, 891 (Tex. 
Crim. App. 1999).  Therefore, we give almost total deference to the trial 
court's rulings on (1) questions of historical fact and (2) 
application-of-law-to-fact questions that turn on an evaluation of credibility 
and demeanor. Johnson v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 
2002); Harrison v. State, 144 S.W.3d 82, 85 (Tex. App.—Fort Worth 2004, 
pet. filed); Best, 118 S.W.3d at 861-62.  However, when the trial 
court’s rulings do not turn on the credibility and demeanor of the witnesses, 
we review de novo a trial court's rulings on mixed questions of law and 
fact.  Johnson, 68 S.W.3d at 652-53.
        When 
the only evidence presented in a motion to suppress hearing is the testimony of 
the arresting officer (which, if believed, clearly adds up to a reasonable 
suspicion or probable cause) and the trial court grants the motion without 
filing findings of fact or any other explanation, there is not a “concrete” 
set of facts that can be implied from such a ruling.  Ross, 32 
S.W.3d at 856.  In those cases, there is a mixed question of law and fact 
that turns on an evaluation of the credibility and demeanor of the sole witness 
who the trial court obviously chose not to believe.  Guzman, 955 
S.W.2d at 89. We give almost total deference to the trial court’s ruling on 
such questions.  Id.; see also Ross, 32 S.W.3d at 856.
        When 
the sole witness at the motion to suppress hearing is the arresting officer and 
the trial court filed findings of fact and conclusions of law, however, the only 
question before us is whether the trial court properly applied the law to the 
facts it found.  See Carmouche, 10 S.W.3d at 327-28; Guzman, 
955 S.W.2d at 86-87, 89; Harrison, 144 S.W.3d at 85; James v. State, 
102 S.W.3d 162, 169-79 (Tex. App.—Fort Worth 2003, pet. ref’d).  This 
is especially true in a case like this where the State has not contested the 
trial court’s findings of fact and the trial court’s findings show that the 
court believed the arresting officer but concluded his testimony was 
insufficient as a matter of law.  See Ross, 32 S.W.3d at 856-58; Guzman, 
955 S.W.2d at 89; State v. Maldonado, No. 01-03-774-CR, 2004 WL 2306703, 
at * 2 (Tex. App.—Houston [1st Dist.] Oct. 14, 2004, no pet. h.).
        The 
State asserts, because of this, that we should apply a de novo standard of 
review in this case.  The State says that there is a “concrete” set of 
facts because the record affirmatively indicates the trial court believed all of 
Officer Gibbs’s testimony.  See Ross, 32 S.W.3d at 857-59.  
We agree, but clarify that we are applying a de novo review only to the question 
of whether the trial court correctly applied the law to the facts it found as 
opposed to the correctness of any facts it found.  See Swearingen v. 
State, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004) (explaining application of 
various standards of review to warrantless searches and searches pursuant to a 
warrant) (citing Ornelas v. United States, 517 U.S. 690, 697-98, 116 S. 
Ct 1657, 1662 (1996)); see also Johnson, 68 S.W.3d at 652-53; Ballard, 
987 S.W.2d at 891; Harrison, 144 S.W.3d at 85-86; Lemmons v. State, 
133 S.W.3d 751, 755 (Tex. App.—Fort Worth 2004, pet. ref’d).  Because 
the trial court entered both findings of fact and conclusions of law and because 
those findings make clear that the trial court accepted virtually all of Officer 
Gibbs’s testimony, we must give that court almost total deference in reviewing 
those historical facts but may review de novo the application of the law to 
those facts.[1]  See Ross, 32 
S.W.3d at 856-58.
Discussion
        In 
the State’s first point, the State contends that the trial court erroneously 
determined that section 545.104 of the transportation code did not apply to the 
turn appellee made from the parking lot onto Hulen Street.  See Tex. Transp. Code Ann. § 545.104.  
In the State’s third point, it contends Officer Gibbs had probable cause to 
stop appellee because appellee committed a traffic violation by failing to 
signal when turning from the parking lot onto Hulen Street.  In its 
conclusions of law, the trial court determined that appellant committed no 
traffic violation because neither the transportation code nor the city’s 
municipal code requires a turn signal on a stop and turn from a private driveway 
onto a public street or highway.  Id.; Fort Worth, Tex., Code ch. 22, art. 3, 
§ 22-78 (2004).[2]  The court also concluded 
that because the nonexistent traffic violation was the only basis for the stop, 
the stop was invalid; accordingly, the trial court granted the motion to 
suppress.
Traffic Code Violation
        Under 
the Texas Transportation Code, an operator is required to use a turn signal to 
indicate an intention to turn, change lanes, or start from a parked position 
when a vehicle is being operated on a highway. Tex. Transp. Code Ann. §§ 542.001, 
545.104.  A highway is defined as “the width between the boundary lines 
of a publicly maintained way any part of which is open to the public for 
vehicular traffic.”  Id. § 541.302(5).  Thus, the trial 
court concluded that because the parking lot was not a highway but a privately 
maintained place, the signaling requirement did not apply to appellee’s turn.
        Further, 
the court observed that while a traffic violation is not required for an officer 
to stop and detain a vehicle, an officer must otherwise have a reasonable 
suspicion supported by articulable facts that criminal activity may be 
afoot.  The court concluded that the officer did not have reasonable 
suspicion to stop the vehicle because the officer had no identifying information 
on the driver of the vehicle at the time the citizen saw the vehicle as opposed 
to when the officer saw it leaving, the vehicle had remained parked and 
unoccupied for nearly an hour in the parking lot, and over an hour had passed 
since the concerned citizen had called to report the erratic driving of the 
vehicle.  Our review of the record and the trial court’s findings and 
conclusions leads us to likewise conclude that the trial court properly applied 
the law to the facts and correctly granted appellee’s motion to suppress.
        An 
officer must have probable cause to stop a vehicle and arrest the driver for a 
traffic violation without a warrant.  Ballard, 987 S.W.2d at 
892.  Probable cause exists when the facts and circumstances within the 
officer’s knowledge at that time, and of which he has reasonably trustworthy 
information, would cause a reasonably prudent person to believe that a certain 
person has committed or is committing a crime.  Id.  When an 
officer observes a traffic offense, he may arrest the violator. Lemmons, 
133 S.W.3d at 756.  Here, however, the officer did not observe a traffic 
offense; he only thought he had.  The trial court properly determined the 
officer did not observe a traffic violation under section 545.104 of the 
transportation code and therefore had no probable cause to stop or arrest 
appellee.  We overrule the State’s first and third points.
        Additionally, 
the State’s fourth point claims trial court error that conflicts with article 
14.01 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 14.01 
(Vernon 1977).  Article 14.01 gives officers the right to arrest without a 
warrant in limited situations in which the officer sees an offense committed in 
his presence or within his view.  Id.  However, as we have 
already concluded that appellee committed no offense in Officer Gibbs’s view, 
article 14.01 is inapplicable as well.  We overrule the State’s fourth 
point.
        In 
the State’s second point, it contends that the trial court erred by concluding 
the officer lacked reasonable suspicion to stop appellee on the basis of the 
traffic violation.  At trial, however, the State relied solely on two 
theories to justify the stop: (1) that the officer had probable cause to stop 
and arrest appellee due to a traffic violation and (2) that the officer had 
reasonable suspicion to stop and investigate appellee due to the concerned 
citizen call on a possible DWI.  At no time during the hearing on the 
motion to suppress did the State claim that the officer had reasonable 
suspicion to stop and investigate appellee due to an alleged traffic code 
violation.  And on appeal, the State has abandoned any claim of reasonable 
suspicion based upon the private citizen’s call.
        In 
cases in which the State is the appealing party, points not raised or argued by 
the State at trial are waived and cannot be raised for the first time on 
appeal.  State v. Mercado, 972 S.W.2d 75, 78 (Tex. Crim. App. 
1998).  According to the court of criminal appeals, this limitation arises 
out of a similar rule of appellate jurisprudence applicable to the defense: 
points not raised and argued at trial are deemed to be waived.  Id.; see 
also Tex. R. App. P. 
33.1(a).  This is so despite many cases affirming a trial court’s 
decision denying suppression based upon unraised claims in which the 
defendant is the appellant and the State is seeking to uphold a lower court’s 
determination in its favor.  Mercado, 972 S.W.2d at 78.  As the 
court of criminal appeals stated in Mercado:
  
Although this Court has approved of appellate courts considering alternative 
theories of law applicable to the facts of the case which support the 
trial court’s decision, we have not afforded the courts of appeals latitude to 
reverse a trial court’s decision on new theories of law not previously 
presented to that court for its consideration.
  
Id. 
at 77.  Thus, the State may not claim for the first time on appeal that 
Officer Gibbs had reasonable suspicion to stop and detain appellee based upon 
the alleged traffic code violation.  Therefore, we overrule the State’s 
second point.
        In 
the State’s fifth, sixth, seventh, and eighth points, it asserts trial court 
error based upon Terry v. Ohio, the Fourth Amendment to the United States 
Constitution, and article I, section 9 of the Texas Constitution. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Terry v. 
Ohio, 392 U.S. at 1, 88 S. Ct. at 1868.  In support of these points, 
the State summarily claims that we should look generally to the central 
requirement of the reasonableness of Officer Gibbs’s search and that since the 
record shows the officer conducted himself reasonably, we should sustain its 
fifth, sixth, seventh, and eighth points.
        However, 
these points were not separately presented or ruled upon in the trial court, so 
they are waived to the extent they are not otherwise encompassed in the 
State’s other points.  See Mercado, 972 S.W.2d at 78.  Also, 
to the extent that these arguments are addressed in the State’s discussions of 
its other points, we do not address them separately here because they are more 
specifically addressed in our discussion of the State’s other points and 
because there is little additional analysis or argument under these points that 
was not already discussed elsewhere.  See Tex. R. App. P. 38.1; Wood v. State, 
18 S.W.3d 642, 649 n.6 (Tex. Crim. App. 2000); Harris v. State, 133 
S.W.3d 760, 764 n.3 (Tex. App.—Texarkana 2004, pet. ref’d); Martinez v. 
State, 969 S.W.2d 497, 499 (Tex. App.—Austin 1998, no pet.).  We 
overrule points five, six, seven, and eight.
Conclusion
        Having 
overruled the State’s eight points, we affirm the judgment of the trial court.
 
 
                                                                  TERRIE 
LIVINGSTON
                                                                  JUSTICE
 
 
 
PANEL 
F:   LIVINGSTON, WALKER, and MCCOY, JJ.
 
PUBLISH
 
DELIVERED: 
December 16, 2004

 
NOTES
 
1.  
The trial court’s findings of fact and conclusions of law are attached to this 
opinion as appendix “A.”
 
2.  
The State does not contend on appeal that appellee’s turn onto Hulen Street 
constituted a violation of the Fort Worth Code.
 

 
APPENDIX “A”
 
FINDINGS OF 
FACT
 
1.     On 
July 17, 2002, a concerned citizen called the Fort Worth Police Department to 
report a maroon Toyota Camry “driving erratically” as it proceeded eastbound 
on Interstate 30, passing Camp Bowie, and exiting at Hulen Street.
 
2.     According 
to the Fort Worth Police Department’s dispatch records, three calls were made 
by the concerned citizen at 7:41 p.m., and 7:43 p.m., and 7:45 p.m.
 
3.     The 
caller identified the Camry by license plate numbers ZTT48B/BTT48B.
 
4.     The 
caller further identified herself as Karen and gave her cellular phone number to 
dispatch.
 
5.     The 
caller did not give a description of the driver of the vehicle; however, she 
reported seeing the driver with a drink in the car.
 
6.     The 
caller indicated the vehicle was turning into a shopping center on Hulen Street 
known as [t]he Central Market Shopping Center.
 
7.     At 
8:30 p.m., approximately 45 minutes after dispatch received the calls, Corporal 
Gibbs of the Fort Worth Police Department received the broadcast via his Mobile 
Data Terminal (MDT) regarding the maroon Toyota Camry.
 
8.     Fort 
Worth officers H. Gibbs and W. Browning proceeded to the Central Market parking 
lot where they located a maroon Toyota Camry matching the description given by 
the concerned citizen.
 
9.     The 
maroon Camry was parked and unoccupied.
 
10.   The 
concerned citizen was not present in the Central Market parking lot.
 
11.   Officer 
Gibbs drove past the vehicle, but did not remember getting out of his vehicle to 
look inside the Camry.
12.   Officer 
Browning made contact with off duty officer J. Williams, who was working 
security at the location. Officer Williams was asked to contact Officer Browning 
when the vehicle in question was again occupied.
 
13.   At 
approximately 8:50 p.m., over an hour after the calls were originally made by 
the concerned citizen, Officer Williams advised Officers Browning and Gibbs that 
the Camry was being occupied in the Central Market parking lot.
 
14.   Officers 
Gibbs and Browning were near the location and immediately made the scene.
 
15.   Officers 
observed the vehicle stopped in the Central Market parking lot at the 
intersection of the shopping center and Hulen Street, which is controlled by 
traffic lights facilitating vehicles coming into and exiting from the shopping 
center.
 
16.   The 
officers witnessed the vehicle make a right-hand turn out of the parking lot 
onto the public street without using a turn signal.
 
17.   Corporal 
Gibbs stopped the vehicle.
 
18.   Corporal 
Gibbs first identified Wayne T. Ballman as the driver of the vehicle after he 
made the stop.
 
19.   Other 
than failure to signal, Officer Gibbs did not observe any driving facts which 
would cause him to believe the driver of the vehicle was intoxicated.
 
20.   But 
for the broadcast from the concerned citizen, Officer Gibbs would not have been 
alerted to the defendant’s vehicle.

CONCLUSIONS 
OF LAW
 
1.     Section 
541.301 of the Texas Transportation Code defines a highway or street as: “the 
width between the boundary lines of a publicly maintained way, any part of which 
is open to the public for vehicular traffic.”
 
2.     The 
parking lot where the Defendant was observed not using his turn signal is not a 
publicly maintained way.
 
3.     Section 
541.302(9) of the Texas Transportation Code states: “a private road or 
driveway, means a privately owned way or place used for vehicular traffic and 
used only by the owner and persons who have the owner’s express or implied 
permission.”
 
4.     The 
parking lot in which Defendant’s car was observed by Corporal Gibbs is 
privately maintained and is not a public way.
 
5.     Section 
541.303 of the Texas Transportation Code defines an intersection as:
 
(a) 
. . . the common area at the junction of two highways, other than the junction 
of an alley and a highway.
 
(b) 
The dimensions of an intersection include only the common area.

                (1)“Within 
the connection of the lateral curb line or, in the absence of curb lines, the 
lateral boundary lines of the roadway of intersecting highways that join at 
approximately right angles.”
 
6.     The 
privately maintained way where Defendant’s car was observed by Corporal Gibbs 
is not an intersection as defined by Section 545.103 Texas Transportation Code.
 
7.     Section 
542.001 of the Texas Transportation Code (Vehicles on highways) states: “a 
provision of this subtitle relating to the operation of a vehicle applies only 
to the operation of a vehicle on a highway unless the provision specifically 
applies to a different place.[“]
 
8.     Section 
545.104 of the Texas Transportation Code; Signaling turns; use of turn signals 
does not contain a provision that makes this provision applicable to privately 
maintained ways.
 
9.     Section 
542.005 of the Texas Transportation Code only allows owners of private property 
to regulate traffic on their property; it does not give peace officers the 
authority to enforce traffic laws on private property.
 
10.   The 
City of Fort Worth Municipal Code, Section 22-78, applies only to vehicles 
turning or entering a private road or driveway, and does not apply to this case.
 
11.   There 
is no requirement that a traffic regulation has been or is about to be violated 
in order for an officer to have reasonable suspicion sufficient to justify a 
stop of a vehicle.
 
12.   A 
police officer may stop and briefly detain a person for investigative purposes 
if the officer has reasonable suspicion supported by articulable facts that 
criminal activity may be afoot, even if the officer lacks evidence rising to the 
level of probable cause.
 
13.   Reasonable 
suspicion exists if the officer has specific articulable facts that, when 
combined with rational inferences from those facts, would lead him to reasonably 
suspect that a particular person has engaged in or is, or soon will be, engaging 
in illegal conduct.
 
14.   Reasonable 
suspicion is determined by considering the “totality of the circumstances.”
 
15.   An 
officer may be justified in stopping a driver based upon a reasonable suspicion 
of driving while intoxicated.
 
16.   Because 
over an hour had passed between the time of the broadcast and the stop of the 
vehicle, the police lost nexus between the broadcast and the stop.
 
17.   Because 
over an hour had passed between the time of the broadcast and the stop of the 
vehicle, Officer Gibbs did not possess sufficient facts that, based solely upon 
the broadcast, warranted him to reasonably suspect the Defendant was engaged in 
the illegal activity of driving while intoxicated.
 
18.   Because 
over an hour had passed between the time of the broadcast and the stop of the 
vehicle, Officer Gibbs did not possess sufficient facts that, based solely upon 
the broadcast, warranted him to reasonably suspect that someone in the vehicle 
was engaged in the illegal activity of public intoxication.
 
19.   Because 
over an hour had passed between the time of the broadcast and the stop of the 
vehicle, Officer Gibbs did not possess sufficient facts that, based solely upon 
the broadcast, warranted him to reasonably suspect that someone in the vehicle 
possessed an open container of alcohol.

[Citations 
omitted].