COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-04-522-CR

 

 

EFRAIN ALAMEDA                                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT
 COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction

Appellant Efrain Alameda
appeals his convictions for aggravated sexual assault of a child under fourteen.  In two issues, appellant argues that an
audiotape of his sexual conversations with a minor child and a transcription of
the audiotape should have been excluded. 
In his third issue, appellant contends that the cumulation of his
sentences is not authorized by the United States Constitution.  We affirm.








II.  Background Facts

In 2002, Deborah H. let
appellant move in with her and her twelve-year old daughter, J.H., while
appellant was going through a divorce. 
Deborah had known appellant for eight to nine years before he moved
in.  Appellant lived with Deborah and
J.H. for approximately a year and moved out because he was upset that his
ex-wife kept calling Deborah and asking her to watch their kids instead of
calling him. 

During his stay with Deborah,
appellant stayed in the third bedroom, which was right next to J.H.=s bedroom and across the hall from Deborah=s bedroom.  Deborah was home
almost every night.  While appellant was
living with her, Deborah did not see or hear anything that would indicate that
appellant and J.H. were engaging in a sexual relationship.








When appellant moved out,
Deborah told him and J.H. that if they wanted to talk to each other they would
have to go through her.  However, after
appellant left, Deborah was suspicious that the two were communicating without
her knowledge, so she bought a recording device to pick up all incoming and
outgoing phone calls to and from her home. 
Deborah testified that she bought the device because she was concerned for
the safety of her daughter.  However, she
also testified that she did not know that appellant and J.H. were engaging in
sexual intercourse when she bought the device, but felt like they were engaging
in inappropriate behavior.

Deborah attached the recording
device to the phone in the garage.  All
six phone jacks in the house had the same phone number, and Deborah paid all of
the phone bills.  For two weeks, she
recorded all incoming and outgoing phone calls from her house.  During those weeks Deborah obtained fifteen
to twenty hours of audiotape between appellant and J.H.  Neither appellant nor J.H. was aware that
they were being recorded.  The audiotapes
contained sexually explicit language, and during the conversations, appellant
and J.H. discuss having a baby together and moving into an apartment.  After listening to the audiotapes of
appellant and J.H., Deborah gave them to the Arlington Police Department. 








After appellant was charged
with aggravated sexual assault of a child, he filed a motion to suppress the
audiotapes on the basis that they are not admissible under article 38.23 of the
code of criminal procedure because section 16.02 of the penal code makes it an
offense to intentionally intercept wire communications when no consent has been
given.  Tex.
Code Crim. Proc. Ann. art. 38.23 (Vernon 2005); Tex. Penal Code Ann. ' 16.02 (Vernon
Supp. 2005).  The State argued that
Deborah vicariously consented to the recording of the conversations on J.H.=s behalf.  The State pointed out
that there is no Texas
case law on the vicarious consent doctrine; however, several federal courts
have held that the doctrine applies under the federal wiretap laws. Appellant
countered that the vicarious consent doctrine has not been adopted in Texas, and two state courts have failed to extend the
exception because it does not exist in Texas
statutes.[1]  Appellant also asserted that in Pollock v.
Pollock, the Sixth Circuit held that a parent must have a good faith basis for
believing that recording is in the best interest of his or her child before he
or she uses the doctrine of vicarious consent to record the child=s telephone conversations. 154 F.3d 601, 607 (6th Cir. 1998).  According to
appellant, the only harm that Deborah was trying to protect J.H. from was
driving a car when she was not supposed to and violating house rules.  In denying appellant=s motion to suppress, the trial court stated, A[T]he Court specifically finds that a parent can vicariously consent
to tape recording of their own child=s testimony.@








At trial, the State
introduced an edited audiotape for the jury to hear. Deborah was not sure if
the events on the audiotape were in chronological order.  The State also gave the jury a transcription
of the edited audiotape so the jury could follow along.  Appellant objected to the transcription under
the best evidence rule stating that it was a duplicate of the audiotape and
that there was no need for it.  The trial
court overruled appellant=s objection.


On October 26, 2004, the jury
found appellant guilty of two counts of aggravated sexual assault of a child
and assessed his punishment at two thirty-year terms in the Institutional
Division of the Texas Department of Criminal Justice. 

III.  Discussion

A.  Motion to Suppress








In his first issue, appellant
contends that the trial court erred by not suppressing the audiotape.  He argues that Deborah violated Texas wiretap laws
because neither J.H. nor appellant knew that their conversations were being
recorded and, under article 38.23 of the Texas Code of Criminal Procedure, any
evidence that is illegally obtained is not admissible in court.  Tex.
Code Crim. Proc. Ann. art. 38.23. 
Additionally, appellant asserts that the vicarious consent doctrine does
not apply in Texas,
and even if it does, it is not applicable here. 
The State argues that the trial court did not err in concluding that the
vicarious consent doctrine applied.

1.  Standard of Review








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Carmouche v. State, 10
S.W.3d 323, 327 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  In reviewing the trial court=s decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the witnesses
and the weight to be given their testimony.  State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State
v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).   Therefore, we give almost total deference to
the trial court=s rulings on
(1) questions of historical fact and (2) application-of-law-to-fact questions
that turn on an evaluation of credibility and demeanor.  Johnson v. State, 68 S.W.3d 644, 652-53
(Tex. Crim. App. 2002); State v. Balllman, 157 S.W.3d 65, 67 (Tex. App.CFort Worth 2005, pet. ref=d); Harrison v. State, 144 S.W.3d 82, 85 (Tex. App.CFort Worth 2004, pet. granted); Best, 118 S.W.3d at
861-62.  However, when the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, we review de novo a trial court=s rulings on mixed questions of law and fact.  Johnson, 68 S.W.3d at 652-53.  

When the trial court does not
file findings of fact, we are to view the evidence in the Alight most favorable to the trial court=s ruling and assume that the trial court made implicit findings of
fact that support its ruling as long as those findings are supported by the
record.@  Ross, 32 S.W.3d at 856-58; Guzman, 955 S.W.2d at 89; State v.
Maldonado, No. 01-03-774-CR, 2004 WL 2306703, at * 2 (Tex. App.CHouston [1st Dist.] Oct. 14, 2004, no pet.). 

2.  Applicable Law

Article 38.23 of the code of criminal procedure states that

no
evidence obtained by an officer or other person in violation of any provisions
of the Constitution or laws of the State of Texas, or of the Constitution or
laws of the United States of America, shall be admitted in evidence against the
accused on the trial of any criminal case. 


 

Tex. Code Crim. Proc. Ann. art.
38.23(a).  The
penal code addresses the unlawful interception of communications.  Tex.
Penal Code Ann. ' 16.02.  Section 16.02(b) states in pertinent part:

A
person commits an offense if the person: 

(1) intentionally intercepts, endeavors to
intercept, or procures another person to intercept or endeavor to intercept a wire,
oral, or electronic communication; 








(2) intentionally discloses or endeavors to
disclose to another person the contents of a wire, oral, or electronic
communication if the person knows or has reason to know the information was obtained
through the interception of a wire, oral, or electronic communication in
violation of this subsection; [or]

(3) intentionally uses or endeavors to use the
contents of a wire, oral, or electronic communication if the person knows or is
reckless about whether the information was obtained through the interception of
a wire, oral, or electronic communication in violation of this subsection.

 

Id. _
16.02(b)(1)-(3).  The statute lists
eleven affirmative defenses to prosecution under section 16.02(b).  Id.
_ 16.02(c).  The pertinent part
of section 16.02(c) states:

It is
an affirmative defense to prosecution under Subsection (b) that: 

. . . . 

(4) a person not acting under color of law intercepts a wire, oral, or
electronic communication, if: 

(A) the person is a party to the communication;
or 

(B) one of the parties to the communication has
given prior consent to the interception, unless the communication is
intercepted for the purpose of committing an unlawful act.

 

Id. _ 16.02(c)(4).  The statute does
not state whether consent can be given vicariously by a parent. 

 

 

 








                                            3.  Analysis

We recognize that this is a
case of first impression in Texas.  Although no Texas court has addressed this issue in
regard to the penal code wiretap laws, several federal and state courts have.[2]


The federal wiretap laws are
similar to Texas=s wiretap law, and provide that it is unlawful for a person not acting
under color of law to intercept a wire, oral, or electronic communication when one
of the parties to the communication has not consented to the recording.  18 U.S.C. _
2511(2)(d) (West 2000).  Although the
federal statute does not have an explicit exception that allows parents to
vicariously consent for their children, several federal courts have held that
one exists.[3]  








In Pollock, a mother
recorded conversations between her daughter and ex-husband and between her
daughter and her ex-husband=s new wife because she was concerned that her ex-husband was
emotionally abusing her daughter.  Pollock,
154 F.3d at 603.  Although none of
the recorded parties consented to the recording, the mother argued that she had
vicariously consented on behalf of her daughter.  Id.
 The mother stated that she placed
the tape recorder on the extension telephone in her bedroom and that she
recorded the telephone conversations for only a few weeks.  Id.
at 604.  The mother stated that she
believed it was in the best interest of her daughter to record the
conversations.  Id.  The Sixth Circuit recognized that it was the
first federal circuit court to address the issue of vicarious consent, and that
only three federal district courts had previously addressed the issue.  Id.
at 606-07.  The Sixth Circuit Court
adopted the vicarious consent doctrine, stating that

as
long as the guardian has a good faith, objectively reasonable basis for
believing that it is necessary and in the best interest of the child to consent
on behalf of his or her minor child to the taping of telephone conversations,
the guardian may vicariously consent on behalf of the child to the recording. 

 

Id. at 610. 








In Thompson v. Dulaney, one
of the three cases cited in Pollock, the Utah federal district court held that a
mother could vicariously consent to the recording of her minor children=s telephone conversations with their father as a matter of law.  838 F.Supp. at 1545.  The mother recorded the conversations after
suspecting that the father was interfering with her relationship with the
children.  Id. at 1544.  

The Eastern District of
Arkansas has also adopted the vicarious consent doctrine in Campbell v.
Price, and held that the doctrine applies when a parent has a good faith
belief that the recording of his or her minor child=s telephone conversations is in the child=s best interest.  2 F.Supp.2d at
1191-92.   

In Wagner v. Wagner,
the Minnesota
federal district court also adopted the vicarious consent doctrine after
recognizing that all other federal courts that have addressed the issue had
adopted it.  64 F.Supp.2d at 900-01.








Turning to a review of state
court decisions on the vicarious consent doctrine, we first look to an Alabama opinion.  In Silas v. Silas, an Alabama court of civil
appeals held that a father has the authority to vicariously consent to the
recording of his child=s telephone
conversations under the federal wiretap laws. 
680 So.2d 368, 372 (Ala. Civ. App. 1996).  In Silas, the father recorded the
telephone conversations between his minor child and his ex-wife while the minor
child was at his house during visitation and after witnessing his child getting
Aextremely upset@ and crying
after talking with his ex-wife on the telephone.  Id.
at 371.  The Alabama court held that the father had a good
faith, objectively reasonable basis for suspecting Athat the minor child was being abused, threatened, or intimidated by
the mother,@ thereby
adopting and applying the doctrine.  Id. at
372.  








An Arizona court of appeals has also adopted
the vicarious consent doctrine in State v. Morrison.  56 P.3d 63, 65 (Ariz. Ct. App. 2002).  In Morrison, a mother installed a tape
recorder in her home to pick up all telephone conversations after reading
passages in her fourteen-year-old daughter=s diary that contained sexual descriptions referencing the defendant,
who was thirty-five years old.  Id. at
64.  The mother did not obtain consent
from either her daughter or the defendant before recording the
conversations.  Id.  The defendant appealed, arguing that the trial
court erred in failing to suppress the audiotapes because they were obtained in
violation of the federal and state wiretap laws.  Id.  The court of appeals, citing the language in Pollock,
held that a parent can vicariously consent to the recording of his or her minor
child=s telephone conversations as long as the parent has a good faith,
objectively reasonable basis for doing so. 
Id.
at 65.  In so holding, the Arizona court
stated that Aalthough the
Circuit Courts addressing the issue have used different approaches [vicarious
consent doctrine and the extension phone exception],[4]
they are uniform in holding that under certain circumstances a parent may
surreptitiously record the telephone conversations of their children without
violating [the federal wiretap laws].@  Id. 


We agree with the federal and
state courts that have adopted the vicarious consent doctrine.  We hereby adopt the standard set forth in Pollock,
and hold that as long as a parent has a good faith, objectively reasonable basis
for believing that the taping of telephone conversations is in the best
interest of the parent=s minor
child, the parent may vicariously consent to the recording on behalf of the
child.         








Our holding that parents may
vicariously consent to the recording of their child=s telephone conversations is consistent with the rights and duties our
laws give parents in regard to their children. 
Parents have the statutory duty of care, control, and protection of
their children.  Tex. Fam. Code Ann. ' 151.001(a)(2) (Vernon
Supp. 2005).  They also have the right to
make Adecisions of substantial legal significance concerning [their] child.@  Id. ' 151.001(a)(7).[5]  For example, the court of criminal appeals has
held that a child has no reasonable expectation of privacy in his bedroom,  that a parent has a right to be in the child=s bedroom, and that a parent could consent to the search of his or her
child=s bedroom.  Sorensen v.
State, 478 S.W.2d 532, 534-35 (Tex. Crim. App. 1972); Jacobs v. State,
681 S.W.2d 119, 122 (Tex. App._Houston [14th Dist.] 1984, pet. ref=d). 

Further, the United States
Supreme Court has recognized a parent=s authority over minor children:

[T]he
family [is] a unit with broad parental authority over minor children. Our cases
have consistently followed that course; our constitutional system long ago
rejected any notion that a child is Athe mere creature of the
State@ and,
on the contrary, asserted that parents generally Ahave
the right, coupled with the high duty, to recognize and prepare [their
children] for additional obligations@ . . . . The law=s
concept of the family rests on a presumption that parents possess what a child
lacks in maturity, experience, and capacity for judgment required for making
life=s
difficult decisions. More important, historically it has recognized that
natural bonds of affection lead parents to act in the best interests of their
children.

 








Parham v. J.R., 442 U.S. 584,
602, 99 S. Ct. 2493, 2504 (1979) (citations
omitted); see Miller, 118 S.W.3d at 766. 
Therefore, even though not specifically stated in the family code, we
believe that a parent can, in order to protect his or her minor child, record
his or her minor child=s telephone
conversations if the parent meets the Pollock criteria discussed
above.  As a recognized exception to Texas wiretap laws, we
further hold that a recording that meets the Pollock standards is
therefore not excluded by article 38.23.

4.  Application of the Vicarious Consent Doctrine








Having recognized a vicarious
consent doctrine exception to the Texas
penal code wiretap statute and article 38.23, we must determine whether Deborah
could vicariously consent for J.H. under the Pollock standards. At the
October 25, 2004 suppression hearing, Deborah testified that while appellant
lived in her house, he allowed J.H. to do things she was not supposed to.  For example, Deborah stated that appellant allowed
J.H. to drive a car when she was only thirteen years old.  On one occasion, appellant called Deborah
after the car he and J.H. were driving in ran off the road.  When Deborah asked who was driving, appellant
said he was; however, J.H. later admitted that she was the one driving.  Deborah heard from friends that appellant was
continuing to let J.H. drive, although she did not personally see it.  Additionally, Deborah testified that
appellant told her that he enrolled J.H. in a gym and had her lie about her age
because the minimum age limit was sixteen. 
Moreover, after appellant moved out, he continued to contact J.H.  Deborah testified that she knew that
appellant and J.H. were still in contact with each other because appellant=s family would tell her things about herself and J.H. that no one knew
but them.








Deborah also testified that
the reason she recorded J.H.=s telephone conversations was because she believed that J.H. and
appellant were engaging in inappropriate behavior.  Although she did not suspect that the two
were engaging in sexual behavior at the time she started the recording, Deborah
did believe that J.H. and appellant were communicating with each other without
her knowledge and consent.  The fact that
Deborah did not know that J.H. and appellant were in a sexual relationship
until after listening to the recordings is not fatal.  In the cases cited above construing the
federal wiretap law, the parents only suspected that the child was being
manipulated or abused before installing the recording device, and the
recordings confirmed their suspicions. It would seem logical that parents could
install a recording device on their telephone after suspecting that their child
was engaging in inappropriate behavior with an adult, regardless of whether
parents suspected the behavior was sexual in nature.  Thus, viewing this evidence in the light most
favorable to the trial court=s rulings, we hold that the evidence shows that Deborah had a good
faith, objectively reasonable basis for believing that the taping of the
telephone conversations was in J.H.=s best interest.       

Because we hold that the
trial court correctly determined that Deborah had a good faith, objectively
reasonable belief that recording J.H.=s telephone conversations was in J.H.=s best interest, we hold that the trial court did not err in allowing
the audiotapes to be admitted and denying appellant=s motion to suppress.[6]  We overrule appellant=s first issue.

B.  The Transcription of the Audiotape

In his second issue, appellant
argues that the trial court abused its discretion in admitting the
transcription of the audiotape for record purposes and as a demonstrative aid
for the jury because he contends the audiotapes were inadmissible.  However, appellant concedes admitting the
transcription was not improper if the audiotape was properly admitted.  Because we have held that the audiotape was
properly admitted and appellant has conceded this issue, we need not address
it.  Appellant=s second issue is overruled.  Tex. R. App. P. 47.1.








                                 C.  Cumulation of Sentences

In his third issue, appellant
argues that the trial judge=s cumulation of his sentences violated the United States Constitution
and is therefore void. Appellant contends that the jury, not the trial judge,
should have cumulated his sentences because they assessed his punishment.  He is not arguing that the statute allowing
the cumulation of sentences is unconstitutional; rather, he is complaining
about who decides whether or not the sentences are cumulated when a jury
assesses punishment.

The pertinent section of
article 42.08 of the code of criminal procedure provides as follows:

When the same defendant has been convicted in two
or more cases, judgment and sentence shall be pronounced in each case in the
same manner as if there had been but one conviction.  . . . in the discretion of the court, the
judgment in the second and subsequent convictions may either be that the
sentence imposed or suspended shall begin with the judgment and the sentence
imposed or suspended in the preceding conviction has ceased to operate, or that
the sentence imposed or suspended shall run concurrently with the other case or
cases.

 








Tex. Code Crim. Proc.
Ann. art. 42.08(a) (Vernon Supp. 2005).  Section 3.03(b) of the penal code states that
if a person is found guilty of more than one offense arising out of the same
criminal episode, the sentences may run concurrently or consecutively if each
sentence is for a conviction of an offense under section 22.021 of the penal
code committed against a victim younger than seventeen years of age at the time
of the commission of the offense.  Tex. Penal Code Ann. ' 3.03(b)(2) (Vernon
Supp. 2005).  Appellant argues that this
case falls within the rule established by the Supreme Court in Apprendi v. New Jersey that a
defendant may not be exposed to a penalty exceeding the maximum he would
receive if punished according to the facts reflected in the jury verdict alone.  530 U.S.
466, 483, 120 S. Ct. 2348, 2359 (2000).

Here, after the jury assessed
appellant=s punishment
at two thirty-year sentences, the trial judge entered an order cumulating the
sentences.  The cumulation of the
sentences, sixty years, does not exceed the statutory maximum for the offense.  Aggravated sexual assault of a child under
fourteen is a first degree felony punishable by not more than 99 years to life
in the state penitentiary.  Tex. Penal Code Ann. ' 12.32 (Vernon 2003); ' 22.021 (Vernon
Supp. 2005).  Thus, the sentence
appellant received, sixty years, does not run afoul of Apprendi.  








Appellant further argues that
he chose a jury to assess his punishment, so they should determined whether the
sentences would be cumulated, not the trial judge.  We have recently rejected this same argument
in Tyson v. State.  172 S.W.3d
172, 176-77 (Tex. App._Fort Worth 2005, pet. filed). 
Appellant=s third
issue is overruled.        

IV.  Conclusion

Having overruled appellant=s issues, we affirm the judgment of the trial court.  

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL F:    CAYCE,
C.J.; LIVINGSTON and MCCOY, JJ.

 

PUBLISH

 

DELIVERED: November
23, 2005











[1]Appellant
cites Duffy v. State, 33 S.W.3d 17, 25 (Tex. App._El
Paso 2000, no pet.) and Kent v. State, 809 S.W.2d 664, 668 (Tex. App._Amarillo 1991, pet.
ref=d).  However, these cases deal with the recording
of a spouse=s
telephone conversations.  Duffy,
33 S.W.3d at 20-21; Kent, 809 S.W.2d at 667.  They are distinguishable from the present
case because here we are addressing whether a parent can vicariously consent to
the recording of a minor child=s conversations, not whether
a married person can consent to the recording of his or her spouse=s
conversations.   





[2]In Allen
v. Mancini, a modification of a parent-child relationship case construing
chapter 123 of the civil practice and remedies code, the Eastland Court of
Appeals looked at the federal wiretap laws and stated that Mancini had the
right to consent to the audiotape recordings because he was the joint managing
conservator of the minor child, following the criteria set forth in Pollock.  170 S.W.3d 167, 172-73 (Tex. App._Eastland 2005, pet.
filed). 





[3]See, e.g., Pollock, 154 F.3d at 610; Wagner v.
Wagner, 64 F.Supp.2d 895, 901 (D. Minn. 1999); Campbell v. Price,
2 F.Supp.2d 1186, 1191-92 (E.D. Ark. 1998); Thompson v. Dulaney,   838 F.Supp. 1535, 1545 (D. Utah 1993). The Fifth Circuit
has not addressed this issue.





[4]Other
federal circuit courts have addressed the issue under the extension phone
exception, which exempts from the federal wiretap law any telephone instrument
being used by the subscriber in the ordinary course of business.  See Scheib v. Grant, 22 F.3d 149, 154
(7th Cir. 1994); Newcomb v. Ingle, 944 F.2d 1534, 1536 (10th Cir. 1991);
Anonymous v. Anonymous, 558 F.2d 677, 679 (2d Cir. 1977).





[5]The
legislature has recognized
that parents are presumed to be appropriate decision-makers, giving parents the
explicit legal right to consent to their minor child=s medical care and surgical
treatment.  Tex. Fam. Code Ann. '
151.001(a)(6); Miller ex. rel. Miller v. HCA, Inc., 118 S.W.3d 758, 766
(Tex. 2003).





[6]Appellant
argues that a minor child has a right to privacy; however, we need not address
this issue after determining that a parent can vicariously consent to the
recording of his or her child=s telephone
conversations.  See Tex. R. App. P. 47.1.